IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY HARRINGTON, | § § | |
| Plaintiff, | § § | CA No.: 3:16-cv-2204 |
| v. | § § | |
| PORTFOLIO RECOVERY ASSOCIATES LLC, | § § § | Jury Demanded |
| Defendant. | § § | |

**PLAINTIFF LARRY HARRINGTON'S COMPLAINT SETTING FORTH MULTIPLE SEPARATE AND DISTINCT ACTIONS/COUNTS AND DEMAND FOR JURY TRIAL**

1. Plaintiff Larry Harrington ("**Plaintiff**" or "**Harrington**") brings these actions/counts to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). He also brings the actions/counts under the Florida Consumer Collection Practices Act, sections 559.55, et seq., Florida Statutes (hereafter **"FCCPA"**).

2. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Id.* at 744. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them. Thus, and as applicable here, Section 227(b)(1)(A)(iii) of the TCPA specifically prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the

called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"

3. The TCPA prohibits calls to a cell phone made with an auto dialer or with a prerecorded voice unless prior express consent is given. Plaintiff never so consented.

4. Portfolio Recovery Associates LLC ("**Defendant**") called Plaintiff's cell phone on hundreds of times using an auto dialer and a pre-recorded voice. Because Plaintiff had not given his consent to receive calls from Defendant, these calls violated the TCPA.

5. This is the exact scenario Congress attempted to prevent in enacting the TCPA. Plaintiff now seeks this Court's intervention and help in attempting to prohibit this unlawful conduct.

6. Defendant's conduct is also in violation of the FCCPA because Defendant willfully engaging in conduct with such frequency as can reasonably be expected to harass the debtor.

**Parties**

7. Plaintiff Larry Harrington is a resident of the State of Florida.

8. Plaintiff is a debtor and/or alleged debtor as that term is defined by section 559.55(2), Florida Statutes.

9. Plaintiff is the "called party" with respect to the calls placed to his cellular telephone number ***-***-5307.

10. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

11. Defendant is a debt collector who buys junk debt and attempts to collect on it. Defendant regularly conducts business in Texas and operates a call center in this District.

### Jurisdiction & Venue

12. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012). It also has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and/or pursuant to 28 U.S.C. § 1367 for pendant state law claims.

13. Venue is proper because some of the acts subject to this action were taken by Defendant in this District.

### Article III Standing

14. Plaintiff has Article III standing for his claim under the TCPA. *Spokeo, Inc. v. Robins*, --- S.Ct. ---, 2016 WL 2842447, at *5 (U.S. May 16, 2016). Plaintiff was harmed by Defendant's actions of calling his cell phone without consent and with an ATDS and/or a pre-recorded voice in the following manners:

   a. Plaintiff's privacy was invaded by Defendant;

   b. Plaintiff was harassed and abused by Defendant's telephone calls;

   c. Defendant's calls were a nuisance to Plaintiff;

   d. Defendant's calls upset Plaintiff emotionally;

   e. Plaintiff's cell phone was unavailable for other use while processing the illegal calls from Defendant;

   f. Defendant illegally seized Plaintiff's cellular telephone line while they made illegal calls to Plaintiff's cellular telephone;

   g. Plaintiff's cellular telephone line was occupied by multiple unauthorized calls from Defendant;

      h.   Defendant's seizure of Plaintiff's cellular telephone line was intrusive; and

      i.   Plaintiff was inconvenienced by, among other things, hearing his cell phone ring, having to check the calling party and having to delete messages left by Defendant.

### The Telephone Consumer Protection Act

15.    Advances in telecommunications technology have provided benefits to American society. But those benefits are not cost-free; new technologies bring with them new ways to intrude upon individual privacy and waste the time and money of consumers. The 1980s and 90s brought an explosion of abuses of telephone and facsimile technology, including the use of auto-dialers to clog telephone lines with unwanted calls, "robocalls" with unsolicited or unwanted, prerecorded messages, and "junk faxes" that consume the recipients' paper and ink and interfere with the transmission of legitimate messages.

16.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

17.    Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); S*ee also Mims*, 132 S. Ct. at 745.

18. The TCPA regulates, among other things, the use of automated telephone equipment, or "auto-dialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

19. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

20. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

21. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *See FCC Declaratory Ruling,* 23 F.C.C.R. at 564-65.

22. In the same Declaratory Ruling, the FCC emphasized that both the creditors and third party debt collector may be held liable under the TCPA for debt collection calls. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call... A third party collector may also be liable for a violation of the Commission's rules.")

23. On July 10, 2015 the FCC confirmed it previous rulings that an autodialer included equipment that generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. The FCC also reiterated that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. FCC 15-72.

### Factual Allegations

24. At all times material hereto, Defendant did transact business in Lee County, Florida, as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and/or section 559.55(7), Florida Statutes. Defendant sought to collect an alleged debt from Plaintiff that arose from a transaction allegedly incurred for personal, family or household purposes and is therefore a "consumer debt."

25. As described herein, Defendant employed business practices resulting in intentional harassment and abuse of Plaintiff and engaged in patterns of outrageous, abusive and harassing conduct by and through its agents and representatives in an effort to collect the debt from Plaintiff.

26. Within the four (4) year period preceding the filing of this action, Defendant intentionally harassed and abused Plaintiff on numerous occasions by its agents and representatives calling Plaintiff's cellular telephone number with such frequency as can reasonably be expected to harass.

27. Upon information and belief Defendant purchased credit card debt and attempted to collect the balance alleged owed by Plaintiff.

28. Plaintiff had no relationship with Defendant.

29. On information and belief in July of 2013 Defendant began collection efforts on the alleged debt and began a process of harassing phone calls to Plaintiff.

30. Defendant called Plaintiff on a repeated basis. Calls were made to Plaintiff's cell number. On information and belief, the purpose for these calls was debt collection.

31. On information and belief, Defendant made calls to Plaintiff from the following numbers (and others):

   a. 620-263-3537
   b. 412-235-6111
   c. 205-396-3691
   d. 757-512-5018
   e. 757-251-0505
   f. 817-479-9154
   g. 817-500-9094
   h. 410-575-1863
   i. 404-865-3326
   j. 404-719-4368
   k. 440-638-5278
   l. 510-343-3502

  m. 678-275-8928        o. 859-586-9557

  n. 731-345-4195

32. Calls were made by Defendant to Plaintiff at the following cellular number (the "**Cell Phone Number**"):

  a. 239-470-5307

33. Plaintiff is the subscriber on the account for the Cell Phones Number and is charged for calls made to the Cell Phone Number via a monthly charge. At all material times Plaintiff was/is the subscriber to the cell phone service associated with the Cell Phone Number and the cellular service provider for the Cell Phone Number.

34. On many days Defendant called the Cell Phones Number on more than one occasion. On many occasions Defendant called Plaintiff on back to back days. On information and belief, the records of Defendant should show when Plaintiff was called by Defendant. Attached as Exhibit A to this Complaint is a call detail log Defendants showing some of the communications between Defendant and Plaintiff. Many calls are not shown on the log as they occurred after the date on the log stopped.

35. Defendant placed automated calls to Plaintiff's cell phone using an automatic telephone dialing system ("**ATDS**") "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1)."

36. When the calls connected, there was an audible click from the receiver. After a significant pause, a message was left by Defendant either by a live person or a prerecorded voice. As such, the calls at issue were made using an automatic telephone dialing system, equipment having the capacity to dial Plaintiff's number without human intervention.

37. The facts in the preceding paragraph indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

38. On many of the calls Defendant left a message consisting of a prerecorded voice. Plaintiff listened to the message and recognized that it was not a live person leaving the message but an automated voice recording.

39. The facts in the preceding paragraph indicate the call was placed using an "artificial or prerecorded voice."

40. Plaintiff has not provided Defendant with the Cell Phone Number or permission to call his Cell Phone Number.

41. None of the calls at issue were placed by Defendant to Plaintiff's Cell Phone Number for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

42. On information and belief Defendant obtained Plaintiff's cellular number from a credit report which Defendant accessed or through a method known as "skip-tracing," whereby collectors and creditors obtain phone numbers by conducting inquiries upon consumer credit reports or other public record searches.

43. On some occasions after answering the phone Plaintiff spoke with a representative of Defendant and told them the number they were calling was a cell phone and instructed them to quit calling him. Defendant, however, continued to call.

44. As a result of aforementioned tenacious collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy, stress, anxiety, nervousness, hypertension, instability, worry, embarrassment, intimidation, indignation, and, emotional and mental distress. Additionally, Plaintiff suffered from loss of happiness, sleep, privacy, reputation, and, income. All of the abovementioned were caused

by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## Legal Claims

### 1. Violations of the TCPA's provisions prohibiting auto-dialed and prerecorded message calls to cell phones

45.     Plaintiff incorporates the allegations from all of the previous paragraphs as if fully set forth herein.

46.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of the federal law, including 47 U.S.C. §227(b)(1)(A)(iii). Thus, Defendant violated the TCPA by initiating a telephone call using an automated dialing system or prerecorded voice to Plaintiff's telephone number assigned to a cellular telephone service.

47.     Plaintiff is informed, believes and alleges that Defendant's violations of the TCPA described above were done willfully and knowingly.

48.     The willful and knowing nature of Defendant's conduct is exhibited in part by the following facts:

   a.   Defendant is a large entity with access to legal advice through its own regulatory department and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

      b.   Defendant knew or had reason to know that its conduct was inconsistent with published FCC guidance interpreting the TCPA and the plain language of the statute;

      c.   Defendant knew that Plaintiff had not consented to calls to his cell phone as Defendant only received Plaintiff's cell phone from the credit report which it illegally accessed;

      d.   Plaintiff told Defendant to quit calling his cell phone;

      e.   Upon information and belief Defendant knew that permission was required before Defendant could call Plaintiff's cell phone using an auto-dialer or a prerecorded voice; and

      f.   Upon information and belief Defendant was aware of the requirements of the TCPA, but choose to not to comply with those requirements.

49.    Plaintiff is entitled to damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3) because the violations were willful and knowing violations of the TCPA.

### 2. Multiple Separate and Distinct Actions/Counts for Violations of Section 559.72(7) of the FCCPA

50.    Plaintiff incorporates the allegations from all of the previous paragraphs as if fully set forth herein.

51.    At all times material to this action Defendant was a debt collector and was and is subject to and must abide by the law of Florida, including section 559.72, Florida Statute. At all times material to this action Plaintiff was an alleged debtor under the FCCPA.

52.    On multiple occasions, including but not limited to, those set forth in Exhibit A attached hereto, Defendant engaged in acts or omissions prohibited under section

559.72(7), Florida Statutes, by willfully communicating with Plaintiff or any member of his family with such frequency as can reasonably be expected to harass Plaintiff or by willfully engaging in other conduct which can reasonably be expected to abuse or harass Plaintiff. Each act or omission prohibited by the FCCPA is a separate action/count by Plaintiff against Defendant under this Complaint for a violation of the FCCPA for which Plaintiff seeks recovery.

53. Each of the communications (phone calls) referenced above constitutes a separate and distinct action/count in this Complaint. Plaintiff is entitled to and requests damages under the FCCPA *per* each individual action/count and seeks an adjudication for actual and statutory damages for each action/count. *See*, *Beeders v. Gulf Coast Collection Bureau*, 632 F.Supp.2d 1125, 1130 (M.D.Fla.2009)("Recovery of statutory damages under the FCCPA is limited to $1,000 per defendant per adverse adjudication. *Fla. Stat.* § 559.77(2). "Adjudication" refers to a final determination or judgment. … The determination of each count of the cause of action constitutes an adjudication. Under the FCCPA, each of these adjudication, if adverse, is eligible for its own award of statutory damages up to the maximum of $1,000.").

54. Defendant's actions were willful, malicious, intentional and knowing, and in gross or reckless disregard of the rights of Plaintiff.

55. Defendant's actions have directly and proximately resulted in Plaintiff's sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; statutory damages; attorney fees, interest and costs.

## Relief Sought

56. Plaintiff requests the following relief:

    a. That Defendant be found liable under the TCPA and Plaintiff be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each willful/knowing violation of the TCPA;

    b. That Defendant be found liable under the FCCPA and Plaintiff be awarded actual damages, including but not limited to, emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; additional statutory damages; punitive damages; attorney fees; interest; and costs under the FCCPA;

    c. That each action/count alleging a violation of the FCCPA be adjudicated separately and that Plaintiff be awarded actual damages and the maximum amount of statutory damages for each of the separate and distinct actions/counts against Defendant alleging a violation of the FCCPA; and

    d. Plaintiff be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

| | |
|---|---|
| **Respectfully submitted,** | By:  _/s/ Chris R. Miltenberger_ <br> Chris R. Miltenberger <br> Texas Bar Number: <br> 14171200 |

**The Law Office of Chris R. Miltenberger, PLLC**

1340 N. White Chapel, Suite 100
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**Attorney for Plaintiff**